OPINION
Cindy Williams was charged with driving under the influence of alcohol [R.C. 4511.19(A)(1)] and with driving with a prohibited concentration of alcohol in her breath [R.C. 4511.19(A)(3)]. After her motion to suppress evidence was overruled, Williams entered a plea of no contest to driving under the influence and was found guilty. The court disposed of the case accordingly. On appeal, Williams advances three assignments of error.
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE OBTAINED AFTER THE ARRESTING OFFICER UNLAWFULLY STOPPED HER.
 The only witness at the suppression hearing was Beavercreek Police Officer James Kirk, who had over twenty years experience with the Beavercreek Police Department. He arrested Williams for DUI at approximately 1:00 a.m. on July 29, 1999, at an apartment complex after Williams had parked her car. Kirk testified that Williams' "unusual maneuvering . . . while she was trying to park her car" occasioned his making contact with her:
 I noticed Ms. Williams' car sitting in the traveled portion of the access roadway to the apartment complex. The car was sitting motionless and did so for a length of time I thought was out of the ordinary for someone parking a car. Then Ms. Williams went ahead and attempted to park her car. As she did so, she made repeated attempts to put the car into the parking space. As she was doing so, she would pull forward, back up, pull forward, back up. During most of these maneuvers, she came in close proximity to other parked vehicles.
* * *
 She was looking for a parking space here. Sat for a lengthy period of time here. Then she began a series of maneuvers, in-out, in-out, each time coming in close proximity to the cars parked here. On at least one occasion, I thought a collision was imminent. So, eventually, Ms. Williams managed to work her way into this particular spot. When she did so, I moved to right here and made contact with her.
 The parking places were described as "slots," and we conclude that they were either diagonal or perpendicular to the sidewalk abutting the edge of the parking lot. The period of time Williams' car was motionless prior to her beginning to park it was "probably about 30 seconds, possibly longer." Officer Kirk testified that there was no reason for Williams to hesitate before parking her car, and that the cars on each side of her slot were properly parked. There were two cruisers in close proximity to Williams' slot with their parking lights on due to Officer Kirk and another police officer having just completed investigating an unrelated complaint at the apartment complex. After observing Williams park her car, Officer Kirk "suspected . . . Williams was intoxicated" and moved from his original vantage point to the left front fender of her car. Williams got out of her car and approached Officer Kirk:
 Q. When she got out of the car, did you notice anything unusual about her?
 A. I felt she was walking with difficulty and having trouble actually getting out of the car.
 Q. I need you to be more specific. What did you observe?
A. Her balance was poor.
* * *
 Q. You are indicating that she put her hand along the vehicle as she walked towards you, is that correct?
A. Yes.
 Q. And you observing that, what did that mean to you or what did you perceive that to be, the reason for that?
 A. Led me to believe that she had had too much to drink to drive.
Q. Why that?
 A. Because of her overall appearance. The motion and action that she did as she was getting out of the car were that of people that I've seen in the past who were drinking and driving.
 Officer Kirk asked Williams for her operator's license which she produced without difficulty. Officer Kirk asked Williams if she had been drinking, and she responded that she had had "several beers." She also "smelled strongly of alcohol" when she spoke. Her speech was slurred. Thereafter, Officer Kirk had Williams perform a single field sobriety test, a "walk-and-turn test," which, in Officer Kirk's opinion, she failed. Officer Kirk then placed Williams under arrest. He testified that Williams' performance of the field sobriety test was not critical to his opinion that she was under the influence. According to the record, Williams tested .15 on a BAC Datamaster breath test.
Williams contends in her first assignment of error that she was unlawfully stopped, and that any evidence developed after that unlawful stop should have been suppressed.
The trial court determined that Williams had not been stopped but, rather, that her encounter with Officer Kirk was consensual. Therefore, "there was no `stop' issue to address." We disagree that there was no stop. In our judgment, Officer Kirk stopped Williams when he asked her to produce her operator's license. SeeState v. Chatton (1984), 11 Ohio St.3d 59, 61. In support of the trial court's determination that there was no stop, the State relies on Florida v. Bostick (1991), 501 U.S. 429 which states in part:
 We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, see INS. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); Rodriguez, supra, 469 U.S. at 5-6, 105 S.Ct., at 310-311; ask to examine the individual's identification, see Delgado, supra, 466 U.S. at 216, 104 S.Ct., at 1762; Royer, supra, 460 U.S. at 501, 103 S.Ct., at 1326 (plurality opinion); United States v. Mendenhall, 466 U.S. 544, 557-558, 100 S.Ct. 1870, 1878-1879, 64 L.Ed.2d 497 (1980); and request consent to search his or her luggage, see Royer, supra, 460 U.S., at 501, 103 S.Ct., at 1326
(plurality opinion) — as long as the police do not convey a message that compliance with their requests is required.
* * *
 In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.
Pp. 434-35; 436.
We believe that a reasonable person in Williams' situation, confronted by a uniformed officer asking for her driver's license, would not have felt free to decline Officer Kirk's request for her operator's license.
Having said that, we turn to whether there was legal justification for the stop. See Ornelas v. United States (1996),517 U.S. 69. In other words, at the time Officer Kirk asked for her operator's license, did he have a reasonable, articulable suspicion that she had been driving under the influence of alcohol? See Terry v. Ohio (1968), 392 U.S. 1, 21-22. We have stated that a police officer may have a reasonable, articulable suspicion that he is observing an alcohol impaired driver even though he has not observed a specific traffic violation. State v.Cross (May 14, 1999), Montgomery App. No. 17316, unreported. Thus, the fact that Williams did not violate a specific statute or ordinance as she parked her car is not dispositive of whether the stop was justified.
In our judgment, the facts set out above — the time, Williams' hesitation before attempting to park, Williams' unusual maneuvers while parking her car, and Williams' appearance and balance as she exited her car and approached Officer Kirk — supported a reasonable, articulable suspicion that Williams had been driving under the influence of alcohol. Thus, the stop was justified.
The first assignment is overruled.
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE RESULTS OF AN IMPROPERLY ADMINISTERED FIELD SOBRIETY TEST.
In State v. Homan (2000), 89 Ohio St.3d 421, the court held:
 In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures.
Syllabus, paragraph 1.
The trial court appears to have implicitly determined during the suppression hearing that the walk-and-turn test did not meet the strict compliance standard of Homan. As such, evidence of the test should not have been considered in the probable cause to arrest analysis by the trial court. Id. Furthermore, we agree with the appellate court that decided Homan that evidence of non-compliant field sobriety tests should be suppressed as trial evidence. State v. Homan (May 14, 1999), Erie App. No. E-97-100, unreported.
Here, the trial court expressly stated it gave little, if any, weight to the walk-and-turn test in doing the probable cause analysis:
 I'm ruling on the probable cause issue now. I do find probable cause, and I find that based upon the officer's observation of her, quote, unusual maneuvering, end quote, of the vehicle in the parking lot, upon his smelling a strong odor of alcohol about Ms. Williams, upon Ms. Williams' statement or admission that she had several beers and came from Martino's, upon his detection of slurred speech, and upon his observation of her exiting her vehicle and having balance problems. I am giving little, if any, weight to the walk-and-turn test.
 Because the trial court ascribed little, if any, weight to the field sobriety test, and because, in our judgment, probable cause to arrest existed absent evidence of the field sobriety test — see third assignment of error; Ornelas, supra — Williams has failed to demonstrate prejudice by the trial court in perhaps giving scant consideration to the field sobriety test in the probable cause analysis.
Furthermore, Williams has failed to demonstrate prejudice in the erroneous failure of the trial court to suppress the evidence of the field sobriety test for trial purposes. Williams elected to plead no contest after her motion to suppress was overruled. Although we have no record of the no contest plea, the record before us certainly entitles us to indulge the presumption of regularity of the proceedings before the trial court, i.e., to presume that there was sufficient evidence, excluding the evidence of the field sobriety test, to support a finding of guilty. In addition to the evidence described above pertaining to whether there was a reasonable, articulable suspicion that Williams was driving under the influence, there was evidence of her slurred speech, strong odor of alcohol, admission to having consumed several beers, and the .15 breath test result. The failure to suppress evidence of the walk-and-turn test was harmless beyond a reasonable doubt. See Chapman v. California (1967), 386 U.S. 18.
The second assignment is overruled.
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE OBTAINED AFTER MS. WILLIAMS' UNLAWFUL ARREST, WHICH WAS EXECUTED WITHOUT PROBABLE CAUSE.
 "Probable cause for an arrest exists when there are facts and circumstances within the police officer's knowledge of which the police officer had reasonable trustworthy information sufficient to warrant a prudent man in believing that a crime or offense has been committed and that the person to be arrested probably committed it." Beck v. Ohio (1964), 379 U.S. 89.
 In our judgment, the evidence discussed above, excluding that of the field sobriety test, supported probable cause to believe Williams had been driving under the influence of alcohol. As such, the trial court's only error was in not suppressing the evidence of the walk-and-turn test which, for reasons stated above, was harmless beyond a reasonable doubt.
The third assignment is overruled.
The judgment will be affirmed.
BROGAN, J. and YOUNG, J., concur.